UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-22121-CIV-WILLIAMS
MAGISTRATE JUDGE P.A. WHITE

MARIO ALBO LARA,

     Petitioner,

v.

                       **REPORT OF**
                    **MAGISTRATE JUDGE**

JULIE JONES, et al.,

     Respondents.

_____/

## I.   Introduction

The *pro se* petitioner, **Mario Albo Lara**, has filed this petition for writ of habeas corpus, as amended (DE#29), with supporting memorandum (DE#30), pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions and sentences for first degree murder, second degree murder, and sexual battery with serious injury, entered following a jury verdict in Miami-Dade County Circuit Court, **Case No. F81-26182.**

This Cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. §636(b)(1)(B), (c); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

For its consideration of the petition, as amended (DE#29), with supporting memorandum (DE#30), the court has the respondent's response to this court's order to show cause (DE#34),[1] along with

_____

[1]The State of Florida and the Eleventh Circuit recognize that "[U]nder the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); Griffin v. Sistuenck, 816 So.2d 600 (Fla. 2002)(date of service in prisoner's certificate of service was used as the filing date); see also Fed.R.App. 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if

its supporting appendices (DE#35), containing copies of relevant state court pleadings, and the petitioner's traverse (DE#36).

## II. <u>Claims</u>

Construing the arguments liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the petitioner raises the following grounds for relief:

1.  Newly discovered evidence demonstrates that petitioner is actually innocent and the prosecution was well aware that testimony presented at trial was not only false, but was intentionally not disclosed to the defense. (DE#29:4 DE#30:3).

2.  "Extraordinary Jurisdiction" and/or "Mandated Deportation" to Cuba is required under the unique circumstances of this case since now deportable and indefinite detention is unconstitutional. (DE#29:6, DE#30:10).

3.  Petitioner is being held in custody in violation of United States precedent where his sentences violate the prohibition against Double Jeopardy. (DE#29:7, DE#30:13).

## III.  **Procedural History**

### A. **Facts Adduced at Trial**

The facts, as summarized by the Florida Supreme Court, on direct appeal of the judgment of conviction, reveal, as follows:

---

it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. <u>See</u> <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). For purposes of this Report, unless otherwise specified, the date of filing of the petitioner's pleadings is the date file stamped by the prison authorities, and if that is unavailable, then it is the date petitioner signed the pleading. If neither is reflected, then the date of filing is the date file stamped as received by the clerk of court.

...On July 16, 1981, a Miami police officer was dispatched to meet Francisco Rizo at an apartment where Rizo had discovered the body of his girlfriend, Grisel Fumero. Rizo let the officer into the apartment and directed him to the kitchen where Fumero was lying face-down on the floor in a pool of blood. She had been shot four times. During the investigation of the crime scene, an upstairs tenant notified the police that there was another body in an upstairs bedroom. This body was identified as that of appellant's girlfriend, Olga Elviro. She had been bound and gagged and had been stabbed three times. Evidence introduced at trial indicated that Elviro had also been raped. A handgun found on the premises was determined to have been the weapon that fired at least one of the bullets into Fumero. The police also recovered a serrated knife which was tentatively identified as the weapon used to stab Elviro.

Evidence presented at trial establish that, at the time of the homicides, appellant was awaiting trial on charges of robbery and voluntary and involuntary sexual battery. The sexual battery victim was Fumero's 13-year-old sister and Fumero was expected to testify against appellant at trial, which was to have begun the week of the homicides. There also was evidence that Elviro had learned of the charges against the appellant and had threatened to leave him. Further, on the day prior to the homicides, appellant had displayed two handguns and had threatened to kill Elviro and her sister-in-law, who had apparently told Elviro of the charges against appellant.

The evidence further established that, on the day of the homicides, appellant went to the upstairs apartment, woke Tomas Barcelo, and stated that he and Elviro needed to use the apartment. Barcelo left the apartment, went out into the yard, and, about half an hour later, saw appellant leave the apartment alone. Appellant next went to the downstairs apartment where he was admitted by Fumero. He went through the kitchen into his brother's bedroom in the same apartment. At this time Barcelo was in the kitchen at the request of Fumero. Appellant returned to the kitchen with his hands behind his back and told Fumero, "It's your fault that I have lost everything." He then pulled a gun from behind his back and shot Fumero in the stomach. She said, "Mario, Mario, why are you doing that to me?" Appellant replied, "Why am I doing that? Son of a bitch," and continued firing until the gun was empty. Appellant continued to pull the trigger after the gun was empty. Appellant's brother, Arsenio Lara, was in the room at this time and both he

and Barcelo told appellant he was a murderer. Appellant retorted, "Oh, I'm a murderer," and, while laughing, started to reload the gun. Appellant's brother and Barcelo, believing they would also be killed, ran out of the apartment. Barcelo fled to New York and was not located until just before the trial. The brother, who was found with a blood-splattered watch in his possession, was originally charged with the murders, but was given immunity in exchange for testifying against appellant and the charges against him were dismissed. He subsequently refused to testify and was jailed for contempt. Rizo, who had notified the police of the murder and admitted them to the premises, became a fugitive and was not available at trial.

The appellate was arrested in New Jersey on July 21, 1981, on outstanding warrants for a robbery and sexual battery which occurred before these homicides. He waived extradition to Florida. An indicated was filed on November 17, 1981, charging appellant with two counts of premeditated murder and one count of involuntary sexual battery. The jury convicted appellant of the first-degree murder of Fumero and the second-degree murder and sexual battery of Elviro.

In the penalty phase, Lara presented the testimony of his aunt, Carmen Lara, who stated that appellant had been regularly beaten as a child by his father and, as a result of one of those beatings, had been hospitalized for a month. No testimonial evidence was presented by the state. The jury, by a eight-to-four vote, recommended the imposition of the death penalty for the murder of Fumero. Prior to the imposition of sentence, the trial court heard testimony from two additional defense witnesses, a psychiatrist and a long-time acquaintance of appellant, who testified concerning appellant's abusive childhood and its effect on his behavior.

The trial court concurred in the jury's advisory sentence and imposed the death penalty, finding three aggravating factors: (1) the appellant was previously convicted of second-degree murder and sexual battery; (2) the murder was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of law; and (3) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The court found that no statutory or non-statutory mitigating factors existed.

<u>Lara v. State</u>, 464 So.2d 1173, 1176-1176 (Fla. 1985).[2]

Petitioner was charged with and found guilty, following a jury verdict, of first degree murder, second degree murder, and involuntary sexual battery. <u>Lara v. State</u>, 464 So.2d 1173 (Fla. 1985). He was adjudicated guilty and the death penalty imposed. <u>Lara v. State</u>, <u>supra</u>. His conviction was affirmed on appeal in a written, published opinion, by the Florida Supreme Court on January 24, 1985. <u>Lara v. State</u>, 464 So.2d 1173 (Fla. 1985). Rehearing was denied on **April 4, 1985**.

Petitioner returned to the trial court, filing his first motion for post-conviction relief, raising multiple claims of ineffective assistance of counsel. See <u>State v. Lara</u>, 581 So.2d 1288 (Fla. 1991). Following a four-day evidentiary hearing, the trial court granted relief, finding that counsel failed to present significant and compelling mitigating evidence at the penalty phase of the original trial. <u>Id</u>. at 1289. On **July 9, 1991,** following an appeal of the court's order, the Florida Supreme Court held that: (1) the evidence supported a finding that defense counsel failed to present available mitigating evidence during the sentencing phase; (2) that such failure may have affected the sentence imposed; and, (3) evidence supported finding that the defendant was not denied effective assistance of counsel during guilt phase. <u>Id</u>. As a result, the case was remanded to the trial court for a new penalty phase proceeding before a new jury, to be held within ninety days from the time the appellate opinion becomes final. <u>Id</u>. at 1290.

---

[2]It appears from the respondent's response (DE#34) that the trial transcripts are no longer available. Given that the evidence adduced at trial has been succinctly summarized by the Florida Supreme Court and is not dispositive of the timeliness issue to be addressed in this Report, this court need not decide whether reliance upon the facts stated therein is proper. It appears from the cases cited by the respondent that it would not, however, be error for this court to rely upon the summary of the evidence as set forth in respondent's response.

Following the Florida Supreme Court's remand, on **March 27, 1992**, a resentencing proceeding was held, at the conclusion of which the death penalty imposed as to the first degree murder conviction. Petitioner appealed the resentencing judgment, raising nine grounds for relief. Lara v. State, 699 So.2d 616 (Fla. 1997). On **June 19, 1997**, the Florida Supreme Court again reversed the second death sentence, finding the trial court erred in giving the jury an unconstitutionally vague jury instruction; and, as such, vacated the death sentence imposed and remanded with directions that a new penalty-phase proceeding, before a new jury, be conducted within 120 days. Id. at 618-619.

Following the Florida Supreme Court's remand, on **May 13, 1998**, a new penalty-phase proceeding was conducted, after which the jury returned a verdict recommending that the petitioner be sentenced to a term of life imprisonment without parole for 25 years. As a result, the trial court entered new judgment, in which it sentenced the petitioner to three consecutive terms of life imprisonment with no possibility of parole for twenty-five years. (DE#35-15:32-34). The judgment was entered on the docket on **June 2, 1998**. (Id.). No direct appeal from this resentencing judgment was taken. The resentencing judgment thus became final on **July 2, 1998,[3]** when the 30-day period for prosecuting a direct appeal expired.[4]

---

[3] Under Fed.R.Civ.P. 6(a)(1), "in computing any time period specified in ... any statute that does not specify a method of computing time ... [the court must] exclude the day of the event that triggers the period[,] count every day, including intermediate Saturdays, Sundays, and legal holidays[, and] include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday. Where the dates falls on a weekend, the Undersigned has excluded that day from its computation.

[4] See Fla.R.App.P. 9.110(b); Demps v. State, 696 So. 2d 1296, 1297, n.1 (Fla. 3d Dist. 1997); Ramos v. State, 658 So.2d 169 (Fla. 3d Dist. 1995); Caracciolo v. State, 564 So.2d 1163 (Fla. 4th Dist. 1990); Gust v. State, 535 So.2d 642 (Fla. 1st Dist. 1988). See generally Ferreira v. Sec'y, Dep't Of Corr's, 494 F.3d 1286, 1293 (11 Cir. 2007)(concluding that the "AEDPA's statute of limitations begins to run from the date both the conviction and the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence.")(emphasis in original) (relying on Burton v. Stewart, 549 U.S. 147, 127 S.Ct. 793, 166 L.Ed.2d

Arguably, because the petitioner's sentence was vacated and a new resentencing hearing and judgment entered, the one-year federal limitations period restarted the commencement of the one-year federal limitations period, pursuant to the AEDPA. See Insignares v. Sec'y Dep't of Corr's,[5] 755 F.2d 1273, 1278-1278 (11th Cir. 2014)(citing Ferreira, 494 F.3d 1286, 1288, 1292-93 (11th Cir. 2007))(finding entry of later judgment reducing sentence resulted in a new judgment and thus was his first challenge to that new judgment); Walker IV v. Sec'y Dep't of Corr's, ___ F.3d ___, 2014 WL 2095370 (N.D. Fla. May 20, 2014)(unpublished)[6] (citations omitted); see also, Stites v. Sec'y Dep't of Corr's, 278 Fed.Appx. 933, 934-935 (11th Cir. 2008); Brown v. Sec'y Dep't of Corr's, 2014 WL 2991131 (N.D. Fla. July 3, 2014)(unpublished)(adopting order finding that later amended judgment granting Rule 3.800(a) motion and awarding jail credit constituted new judgment under Ferreira).

Thus, petitioner had one year from the time his conviction became final on **July 2, 1998**, or until **July 2, 1999**, to timely file his §2254 petition. See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on the anniversary of date it began to run) (citing Ferreira v. Dep't of

---

628 (2007)).

[5]See also Thompson v. Fla. Dep't of Corr's, 606 Fed.Appx. 495, 505 (11th Cir. 2015) (finding "new judgment" for purposes of AEDPA's statute of limitations in state court's resentencing of petitioner for three convictions to same terms of imprisonment as in previous sentence, albeit changing two terms from consecutive to concurrent); Patterson v. Sec'y, Fla. Dep't of Corr's, 849 F.3d 1321, 1326 (11th Cir. 2017) (finding no new judgment for purposes of Magwood in state court's grant of post-conviction relief removing chemical-castration portion of petitioner's sentence of life imprisonment and chemical castration, because change to petitioner's sentence--"removal of chemical castration"--did not concern the judgment authorizing his imprisonment, *i.e.,* the life sentence); Cox v. Sec'y Fla. Dep't of Corr's, 837 F.3d 1114, 1117-18 (11th Cir. 2016) (finding no new judgment for Magwood purposes where state court dismissed one of three counts of conviction on double jeopardy grounds 15 years after trial, because the petitioner had received a suspended sentence on the dismissed count and therefore had never been held in custody under that count).

[6]Although unpublished opinions are not binding on this Court, they are persuasive authority. See 11th Cir. R. 36-2.

Corr's, 494 F.3d 1286, 1289 n. 1 (11th Cir. 2007)(noting that limitations period should be calculated using "the anniversary date of the triggering event").

From the time his conviction became final in **1998**, the limitations ran unchecked for over **13 years** until **September 30, 2011,** when petitioner returned to the trial court, after he signed and handed to prison authorities for mailing, a motion to correct illegal sentence, pursuant to Fla.R.Cr.P. 3.800(a), requesting credit for time served prior to the original sentence and all time served prior to resentencing. (DE#35-15:Ex.L:10). The petitioner's request for credit time served from July 22, 1981 to November 17, 1982 was denied. (DE#35:Exx.MM:43). The sentence imposed as to Count 1 remained unchanged, but as to Counts 2 and 3, the court entered an Order on **September 21, 2012**, granting the motion, in part, to correct the sentences to reflect that the total term of imprisonment was 99 years, with each count to run consecutive to each other, as well as, as to Count 1, in addition to running the sentences consecutive to any other sentence previously imposed upon the petitioner for any offense. (Id.). The order was subsequently *per curiam* affirmed by the Florida Third District Court of Appeal in a decision without written opinion on **March 13, 2013.** Lara v. State, 109 So.3d 1167 (Fla. 3 DCA 2013)(table). The appeal concluded with the issuance of the mandate which was entered on the appellate court's docket, assigned **Case No. 3D12-2813**, on **April 8, 2013.**

Arguably, the **2013** Order correcting the movant's sentences constituted a new sentence since it was not ministerial in nature, and thus restarted the AEDPA one-year limitations period for purposes of determining the timeliness of this federal petition.

See Insignares v. Sec'y Dep't of Corr's,[7] 755 F.2d 1273, 1278-1278 (11th Cir. 2014)(citing Ferreira, 494 F.3d 1286, 1288, 1292-93 (11th Cir. 2007)).

To determine **when** the one-year federal limitations period began to run following the finality of this latest corrected sentence, it must be established when the petitioner's conviction became final. In order to do so, the court must first determine whether petitioner was entitled to seek review to the Florida Supreme Court, as the state's highest court. Determining what constitutes a "state court of last resort" or "the highest court of a State in which a decision could be had," for purposes of the Supreme Court's certiorari jurisdiction, requires an examination of state court procedures. See Costarelli v. Massachusetts, 421 U.S. 193, 195-97, 198-99, 95 S.Ct. 1534, 44 L.Ed.2d 76 (1975); Pugh v. Smith, 465 F.3d 1295, 1299-1300 (11th Cir. 2006); see also Gonzalez v. Thaler, 565 U.S. 134, 149, 132 S.Ct. 641, 656, 181 L.Ed.2d 619 (2012).

In Florida, Article V, section 3(b), of the Florida Constitution governs the jurisdiction of the Florida Supreme Court. See Wells v. State, 132 So.3d 1110, 1112 (Fla. 2014). That provision provides, in relevant part:

---

[7] See also Thompson v. Fla. Dep't of Corr's, 606 Fed.Appx. 495, 505 (11th Cir. 2015) (finding "new judgment" for purposes of AEDPA's statute of limitations in state court's resentencing of petitioner for three convictions to same terms of imprisonment as in previous sentence, albeit changing two terms from consecutive to concurrent); Patterson v. Sec'y, Fla. Dep't of Corr's, 849 F.3d 1321, 1326 (11th Cir. 2017) (finding no new judgment for purposes of Magwood in state court's grant of post-conviction relief removing chemical-castration portion of petitioner's sentence of life imprisonment and chemical castration, because change to petitioner's sentence--"removal of chemical castration"--did not concern the judgment authorizing his imprisonment, i.e., the life sentence); Cox v. Sec'y Fla. Dep't of Corr's, 837 F.3d 1114, 1117-18 (11th Cir. 2016) (finding no new judgment for Magwood purposes where state court dismissed one of three counts of conviction on double jeopardy grounds 15 years after trial, because the petitioner had received a suspended sentence on the dismissed count and therefore had never been held in custody under that count).

(b)   Jurisdiction.—The supreme court:

(3)   May review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.

Fla. Const. art. V, §3(b)(3).

In Wells, the Florida Supreme Court summarized its decisions addressing the limits of its jurisdiction under Fla. Const. art. V, §3(b)(3):

[B]ased on our case law since Jenkins [v. State, 385 So.2d 1356 (Fla.1980)], it is clear that we have explicitly held that this Court lacks discretionary review jurisdiction over the following four types of cases: (1) a *per curiam* affirmance rendered without written opinion—see Jenkins, 385 So.2d at 1359; (2) a *per curiam* affirmance with a citation to (i) a case not pending review or a case that has not been quashed or reversed by this Court, (ii) a rule of procedure, or (iii) a statute—see Dodi Publishing [Co. v. Editorial America, S.A.], 385 So.2d [1369,] 1369 [(Fla.1980)], and Jollie [v. State], 405 So.2d [418,] 421 [(Fla.1981)]; (3) a *per curiam* or other unelaborated denial of relief rendered without written opinion—see Stallworth [v. Moore], 827 So.2d [974,] 978 [ (Fla. 2002)]; and (4) a per curiam or other unelaborated denial of relief with a citation to (i) a case not pending review or a case that has not been quashed or reversed by this Court, (ii) a rule of procedure, or (iii) a statute—see Gandy [v. State], 846 So.2d [1141,] 1144 [(Fla. 2003)].

Wells v. State, 132 So.3d at 1113 (Fla. 2014); see also, Persaud v. State, 838 So.2d 529, 531-32 (Fla. 2003).[8]

_____

[8]The Florida Supreme Court in Persaud found that the decisions in Dodi Publishing Co. v. Editorial America, S.A., 385 So.2d 1369 (Fla. 1980) and Jollie v. State, 405 So.2d 418 (Fla. 1981), "when read together, stand for the proposition that this [Florida Supreme Court] does not have jurisdiction to

As applied here, the order correcting the petitioner's sentence was *per curiam* affirmed by the **Third** District Court of Appeal in a decision without written opinion in **2013**. Under Florida law, petitioner was not allowed to seek the Florida Supreme Court's discretionary review, because the **Third** District Court of Appeal issued a *per curiam* memorandum opinion, affirming the judgment of conviction and resultant sentence, without citing to any decision for which the Florida Supreme Court had accepted review. See Wells v. State, 132 So.3d 1110 (Fla. 2014); Persaud v. State, 838 So.2d 529 (Fla. 2003).

Because the petitioner was not entitled to seek discretionary review to the Florida Supreme Court, the petitioner's conviction became final, and the AEDPA one-year limitations period began to run, at the latest, on **Tuesday, June 11, 2013,** ninety days after the state appellate court affirmed the trial court's order on **March 13, 2013,**[9] when the period for seeking discretionary review with the U.S. Supreme Court expired. See Kaufman v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002)(concluding that conviction does not become "final" for purposes of §2555(f)(1) until the 90-day period for seeking certiorari review expires, even if the prisoner does not petition for such review); Sup. Ct. R. 13; Gonzalez v. Thaler, 565 U.S. 134, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012).[10]

---

review *per curiam* decisions of the district courts of appeal that merely affirm with citations to cases not pending review in this [Florida Supreme Court] Court." Persaud v. State, 838 So.2d 529, 531-32 (Fla. 2003).

[9]"According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion." See Clay v. United States, 537 U.S. 522 (2003); Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003) (citing Supreme Court Rule 13.3). Thus, the AEDPA's one-year limitations period began to run on **June 11, 2013,** as mentioned previously in this Report, ninety days after the appellate court affirmed the judgment of conviction on **March 13, 2013.**

[10]See Gonzalez v. Thaler, 565 U.S. 134, 146-47, 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619 (2012)(holding that conviction becomes final upon expiration of time for seeking direct review); Jimenez v. Quarterman, 555 U.S. 113, 118-21, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules for calculating

Applying the finality trigger of §2244(d)(1)(A), the statute of limitations began running on **Tuesday, June 11, 2013.**

Thus, petitioner had one year from the time his conviction became final on **June 11, 2013** or until **June 11, 2014,** to timely file his §2254 petition. See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on the anniversary of date it began to run) (citing Ferreira v. Dep't of Corr's, 494 F.3d 1286, 1289 n. 1 (11th Cir. 2007)(noting that limitations period should be calculated using "the anniversary date of the triggering event").

However, the one-year limitations period is statutorily tolled during times when a "properly filed" application for post-conviction relief is pending in the state forum. See 28 U.S.C. §2244(d)(2). An application is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000).

From the time his latest order correcting his sentence became final on **June 13, 2013,** over **one year** elapsed until the petitioner next filed on **February 26, 2015,** when he signed and handed to prison authorities for mailing, in accordance with the mailbox rule, as evidenced by the prison mail stamp, a motion to correct illegal sentence, pursuant to Fla.R.Cr.P. 3.800. (DE#35-

---

the one-year period under §2244(d)(1)(A)). See also Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003)(holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); Chavers v. Secretary, Florida Dept. of Corrections, 468 F.3d 1273 (11th Cir. 2006)(holding that one-year statute of limitations established by AEDPA began to run 90 days after Florida appellate court affirmed habeas petitioner's conviction, not 90 days after mandate was issued by that court).

15:Ex.PP:50).[11] The trial court denied relief by written order entered on **June 30, 2015.** (DE#35-15:Ex.QQ:76-82). That denial was subsequently *per curiam* affirmed in a decision without written opinion. <u>Lara v. State</u>, 179 So.3d 333 (Fla. 3 DCA 2015)(table). The appeal concluded with the issuance of the mandate on **December 29, 2015.** (<u>See</u> 3 DCA Docket, Case No. 3D15-2212).

The **2015** Rule 3.800 motion had no tolling effect on the federal limitations period as it was instituted long after the one-year limitations period had expired. <u>See</u> <u>Hutchinson v. Florida</u>, 677 F.3d 1097, 1098 (11th Cir. 2012)("In order for...§2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run."); <u>Webster v. Moore</u>, 199 F.3d 1256, 1259 (11th Cir. 2000). Thus, the Rule 3.800 proceeding and the appeal following its denial, all of which were filed after the federal limitations period had expired, did not impact the limitations period which had already expired.

Notwithstanding, an additional **5 months** went untolled before the petitioner then came to this court, filing the instant federal habeas corpus proceeding at the earliest on **June 6, 2016**, after he signed and handed his initial petition (DE#1) to prison officials for mailing in accordance with the mailbox rule.[12] (DE#1:1).

---

[11]Absent evidence to the contrary, the signature showing a filing date of 2012 is not persuasive, especially as it does not comport with the affirmance required under 28 U.S.C. §1746.

[12]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." <u>Williams v. McNeil</u>, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); <u>see</u> <u>Fed.R.App.</u> 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. <u>See</u> <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

However, a copy of the envelope reveals that U.S. postage was prepaid on **June 7, 2016**. Regardless, when giving liberal construction, the undersigned has utilized as the filing date, **June 6, 2016**. An amended petition was filed on **June 13, 2017**, after it was signed and handed to prison officials for mailing, as evidenced by the prison facility stamp. (DE#29:1).

## IV. <u>Discussion-Timeliness</u>

The respondent argues correctly that this federal petition is time barred. (DE#34:16-20). Since Petitioner filed his federal habeas petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. <u>See</u> <u>Wilcox v. Fla.Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998)(*per curiam*). The AEDPA imposed for the first time a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. <u>See</u> 28 U.S.C. §2244(d)(1)("A 1-year period of limitation shall apply to an application for a writ of habeas corpus....."). Specifically, the AEDPA provides that the limitations period shall run from the latest of —

　　　　(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

　　　　(B) the date on which the impediment to filing an application created by State action  in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

　　　　(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

　　　　(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>See</u> 28 U.S.C. §2244(d)(1).

The limitations period is tolled, however, for "[t]he time during which a properly filed application for post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. §2244(d)(2). Consequently, this petition is time-barred, pursuant to 28 U.S.C. §2244(d)(1)(A), unless the appropriate limitations period was extended by properly filed applications for state post-conviction or other collateral review proceedings. <u>See</u> 28 U.S.C. §2244(d)(2); <u>see also</u>, <u>Rich v. Sec'y for Dep't of Corr's</u>, 512 Fed.Appx. 981, 982-83 (11th Cir. 2013).

An application is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000)(footnote omitted); <u>see also</u>, <u>Rich</u>, 512 Fed.Appx. at 983. Consequently, if the petitioner sat on any claim or created any time gaps in the review process, the one-year clock would continue to tick. <u>Kearse v. Sec'y, Fla. Dep't of Corr's</u>, 736 F.3d 1359, 1362 (11th Cir. 2013). Further, "[a]n application that is untimely under state law is not 'properly filed' for purposes of tolling AEDPAs limitations period." <u>Gorby v. McNeil</u>, 530 F.3d 1363, 1366 (11th Cir. 2008)(citation omitted), <u>cert. den'd</u>, 556 U.S. 1109, 129 S.Ct. 1592, 173 L.Ed.2d 684 (2009); <u>Hutchinson v. Florida</u>, 677 F.3d 1097, 1098 (11th Cir. 2012)("In order for...§2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run."); <u>Webster v. Moore</u>, 199 F.3d 1256, 1259 (11th Cir. 2000).

**A.   Statutory Tolling Under §2244**

As noted previously in this Report, arguably the limitations restarted with the correction to the petitioner's sentence in 2013. However, the petitioner waited well over one year until February 2015 when he returned to the state forum, filing his next motion to correct illegal sentence. The proceeding concluded when the denial of the motion was affirmed on appeal, and the mandate issued on December 29, 2015. Petitioner waited over 6 more months before filing this federal habeas proceeding on June 6, 2016. Given the procedural history narrated above, it is evident that this federal petition was not instituted within a year of the petitioner's conviction becoming final. The petitioner is not entitled to statutory tolling under §2244(d)(1)(A).

In response to the timeliness issue, the petitioner argues that his petition is timely because it was filed "within one year of the January 2017, 'Joint Statement Treaty.'" He maintains that this treaty enables his return to Cuba, and the filing of this petition in 2016 should be deemed timely on that basis. However, this treaty has not been made retroactively applicable to cases on collateral review. Moreover, the treaty was enacted after the petitioner filed this federal proceeding in 2016. Therefore, it would not have restarted the one-year limitations period, nor has the petitioner shown that the Supreme Court, much less any other court, has determined that it is retroactively applicable. Regardless, given the procedural history narrated above, no statutory tolling is warranted.

It also appears the petitioner means to argue that he is not time-barred, because his claim involves newly-discovered evidence, pursuant to §2244(b)(2)(B)(i), which permits him to overcome the procedural bar. (DE#29:4-5). Apparently, the petitioner is relying upon a statement from his sister, Margarita, stating that the

petitioner's brother, Arsenio, went to visit the family, at which time he confessed he had a heart problem and was very sick. (DE#29:11). According to Margarita, Arsenio confessed to her that he was "the one who did everything" that the petitioner was convicted of. (Id.). She claims Arsenio tried to confess, but Arsenio's counsel and the prosecutor prevented him from doing so. (Id.). Margarita goes on to state she does not know why Arsenio "blamed" petitioner for "everything," but believes that Arsenio could not "live in peace, knowing that petitioner was in prison for crimes he did not commit. (Id.). Petitioner states that it was not until recently, when Arsenio died, that petitioner first learned that Arsenio had confessed to the crimes. (DE#30:4). Petitioner suggests, without providing any objective corroborating evidence, that he had numerous tests conducted voluntarily which came back negative for any sign that his blood, fingerprints, sputum, or "bite marks" were present at the scene of the murders. (Id.). Petitioner claims that it was his now deceased brother, Arsenio, and Tomas Barcelo who committed the murders. (Id.;5).

In claim 2, petitioner argues that the prosecution did not reveal that Arsenio had first been charged with the crimes, and only after he agreed to testify against petitioner were the charges dropped. (DE#29:5). In his supporting memorandum, petitioner claims his brother, Arsenio "confessed to the murders." (DE#30:3). Further, petitioner states he was not in Florida at the time of the murders, but was "living in New Jersey with a girl and her family." (Id.). He appears to fault counsel for failing to investigate these facts in order to present an alibi defense, rather than challenge the extradition/arrest warrant, and the petitioner's post-arrest statement to law enforcement in New Jersey. (Id.:4).

Petitioner concedes he has not presented these arguments of actual innocence in the state forum because the time for doing so has long since expired. (DE#30:6). Petitioner also suggests that

the "death bed confession" by Arsenio was not only provided to Margarita, but also to his other brother, Enrique Albo Lara, but Enrique has not been granted entrance into the United States so that he could corroborate Margarita's testimony. (Id.).

In order to proceed on a new-evidence claim, under §2244(b)(2)(B)(i), the petitioner must demonstrate that the factual predicate for his claim "could not have been discovered previously through the exercise of due diligence." Petitioner does not meet this burden. Further, Section 2244(b)(2)(B)(i) only pertains to successive or second habeas petitions; and, since this is petitioner's first federal habeas petition, it is not applicable for purposes of tolling the federal limitations period.

Moreover, there is no legitimate justification for why petitioner could not have earlier obtained the information upon which he bases his claim. Petitioner, either individually or through counsel, could have well discovered the information narrated herein as early on as the time of trial, and certainly within a few years post-conviction. His lack of diligence will not support a finding, under §2244(d)(1)(D), that the limitations period may commence from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Accordingly, this petition should be dismissed.

## B.   Equitable Tolling

Next, this federal habeas proceeding is due to be dismissed unless the petitioner can establish that equitable tolling of the statute of limitations is warranted. However, petitioner has not alleged, let alone demonstrated, that he is entitled to equitable tolling.

Both the United States Supreme Court and Eleventh Circuit Court of Appeals have held that equitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when extraordinary circumstances have worked to prevent an otherwise diligent petitioner from timely filing his petition. Holland v. Florida, 560 U.S. 631, 648, 130 S.Ct. 2549, 2562 (2010)("We have previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.")(quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); San Martin v. McNeil,[13] 633 F.3d 1257, 1267 (11th Cir. 2011); Chavez v. Secretary, Dept. of Corrections, 627 F.3d 1057, 1066 (11th Cir. 2011).

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" Holland v. Florida, 560 U.S. at 652, 130 S.Ct. at 2565 (quoting Lonchar v. Thomas, 517 U.S. 314, 326 (1996)). "As for the 'extraordinary circumstances' prong...a defendant [must] show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." San Martin v. McNeil, 633 F.3d at 1267. In Holland, the Supreme Court reiterated that it had previously found that "'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." Holland v. Florida, 560 U.S. at 651, 130 S.Ct. at 2564 (citations omitted)(quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). The Holland Court noted that when the facts of a case warrant it, equitable tolling can be applied in the "absence of an allegation and proof of bad faith, dishonesty, divided loyalty, [or] mental

---

[13] In San Martin, petitioner failed to explain how a two-week delay in receiving notice of the Supreme Court's denial of his certiorari petition ultimately caused the late filing of his federal petition, or why he did not have ample time, even after the two-week delay, to have presented a timely federal habeas petition. See San Martin v. McNeil, 633 F.3d 1257, 1261-63 (11th Cir. 2011).

impairment." <u>Holland</u>, 560 U.S. at 642-43, 130 S.Ct. at 2559-60. The court further explained that "professional conduct that fails to [rise to that level] could nonetheless amount to egregious behavior that warrants equitable tolling." <u>Holland</u>, 560 U.S. at 650-51, 130 S.Ct. at 2563-64.

In setting aside a court's finding that no diligence had been demonstrated, the Supreme Court found that Holland's counsel had not only failed to file Holland's federal petition on time, but also failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case. <u>Holland v. Florida</u>, 560 U.S. at 651, 130 S.Ct. at 2564. The Supreme Court further found that counsel failed to communicate with his client over a period of years, despite Holland's numerous letters to counsel that repeatedly emphasizing the importance of filing the federal petition on time, identifying the applicable legal rules, pleading for information about the Florida Supreme Court's decision, and pleading with counsel to respond to the letters. <u>Holland v. Florida</u>,[14] 560 U.S. at 651, 130 S.Ct. at 2564.

Something more than attorney negligence may justify equitable tolling in appropriate cases. For example, in <u>Downs v. McNeil</u>, 520 F.3d 1311 (11th Cir. 2009), the Eleventh Circuit drew the distinction between "mere negligence" on the one hand, and

---

[14]In <u>Holland</u>, however, the Supreme Court determined that the facts did not involve a garden variety claim of attorney negligence, but instead far more serious instances of attorney misconduct. <u>Holland v. Florida</u>, 560 U.S. at 651, 130 S.Ct. at 2564. In <u>Holland</u>, the Supreme Court stressed that:

> Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins [Holland's attorney]--the central impediment to the pursuit of his legal remedy--removed from his case. And, the *very day* that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court.

<u>Holland v. Florida</u>, 560 U.S. at 652, 130 S.Ct. at 2565.

"egregious misconduct" on the other. "Egregious misconduct" is conduct in which an attorney makes misrepresentations, gives false assurances, or outright lies about the status of a case to his client. See Downs v. McNeil, 520 F.3d at 1321-22, 1323 (giving an example of egregious misconduct as one of "outright willful deceit"); see also, Roper v. Dep't of Corr's, 434 Fed.Appx. 786, 2011 WL 2693183 (11th Cir. 2011) (unpublished)[15] (holding that "affirmative misrepresentation by counsel" about the status of a motion may constitute "extraordinary circumstances" justifying equitable tolling of the habeas filing deadline).

Further, counsel's mistake "in miscalculating the limitations period does not provide a basis for equitable tolling because such an argument would essentially equitably toll limitations period for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence v. Florida, 549 U.S. 327, 336-37 (2007). Likewise, the filing of motions for extensions of time by counsel to file a motion for post conviction relief in state court also does not serve to toll the AEDPA statute of limitations. Chavez v. Fla. Dep't of Corr's, 647 F.3d 1057 (11th Cir. 2011).

The Eleventh Circuit has also cautioned that a petitioner's efforts to learn the disposition of pre-federal habeas steps are crucial to determining whether equitable tolling is appropriate. See Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002)(per curiam); Drew v. Dep't of Corr's, 297 F.3d 1278, 1288 (11th Cir. 2002)("A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status

---

[15]Although unpublished opinions are not binding on this Court, they are persuasive authority. See 11th Cir. R. 36-2.

*of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition.* (emphasis supplied)")*, overruled on other grounds by* Pace v. DiGuglielmo, 544 U.S. 408, 417, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); see also, Mashburn v. Comm'r, Alabama Dep't of Corr., 713 Fed. Appx. 832, 839 (11th Cir. 2017) (unpublished). Where a petitioner alleges to have contacted the court by mail, but provides no copies of the letters and does not make any attempt to otherwise contact the court, such as by calling or seeking help from a person who could go to the court personally, no equitable tolling is warranted. Drew, 297 F.3d at 1289.

Petitioner has not demonstrated that he was diligent in pursuing post-conviction relief. While the record reveals that Petitioner was a proactive litigant during his direct appeal and some motions for post conviction relief in state court, here he has not established any fact to support a finding that he is "entitled to the rare and extraordinary remedy of equitable tolling." See Drew v. Dep't of Corr's, 297 F.3d 1278, 1289 (11th Cir. 2002). This Court is not unmindful that Petitioner pursued collateral relief in the state forum. However, it is evident that there was well over one year of untolled time during which no properly filed post-conviction proceedings were pending which would act to toll the federal limitations period. As a result of Petitioner's failure to properly and diligently pursue his rights, he has failed to demonstrate that he qualifies for equitable tolling of the limitations period. See Webster v. Moore, 199 F.3d 1256, 1258-60 (11th Cir. 2000)(holding that even properly filed state court petitions must be pending in order to toll the limitations period), cert. den'd, 531 U.S. 991 (2000).

The time-bar is ultimately the result of Petitioner's failure to timely and properly pursue state post-conviction proceedings and then this federal habeas corpus proceeding. Since this habeas

corpus proceeding instituted on **June 6, 2016,** is untimely, Petitioner's claim challenging the lawfulness of his judgment is now time-barred pursuant to 28 U.S.C. §2244(d)(1)-(2) and should not be considered on the merits.

Also, any suggestion in objections or otherwise that he is entitled to equitable tolling, because he is ignorant of the law, has been repeatedly rejected by the Eleventh Circuit and other courts to have considered the issue. Specifically, the Eleventh Circuit has held that a lack of a legal education and related confusion or ignorance about the law, as excuses for a failure to file in a timely fashion, does not warrant equitable tolling of the limitations period. See Perez v. Florida, 519 Fed.Appx. 995, 997 (11th Cir. 2013)(quoting, Rivers v. United States, 416 F.3d 1319, 1323 (11th Cir. 2005)(Finding that, even where movant's lack of education may have delayed his efforts to vacate his state conviction, his procedural ignorance is not an excuse for prolonged inattention when promptness is required)); Felder v. Johnson, 204 F.3d 168, 172-73 & n.10 (5th Cir. 2000)(citing cases), cert. den'd, 531 U.S. 1035 (2000)(holding that ignorance of law and pro se status are insufficient to toll statute of limitations).

As with any litigant, *pro se* litigants "are deemed to know of the one-year statute of limitations." Outler v. United States, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007); see also Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006)(holding that "a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); Shannon v. Newland, 410 F.3d 1083, 1090 (9th Cir. 2005)(observing that, in each of the cases in which equitable tolling has been applied, the requisite "extraordinary circumstances" has been based on "wrongful conduct" that "actually prevented the prisoner from preparing or filing the habeas petition"); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004)(*pro se* status and ignorance of the law does not

justify equitable tolling); <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000)(holding that *pro se* status and lack of access to an attorney do not warrant equitable tolling); <u>Felder v. Johnson</u>, 204 F.3d 168, 171 (5th Cir. 2000)("proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a §2254 claim"); <u>United States v. Flores</u>, 981 F.2d 231, 236 (5th Cir. 1993)(*pro se* status, illiteracy, deafness, and lack of legal training are not external factors sufficient to excuse or extend limitations period); <u>Henderson v. Johnson</u>, 1 F.Supp.2d 650, 656 (N.D. Tex. 1998)(claim by prisoner that he was entitled to equitable tolling, because he " 'did not know what to do,' " is "archetypal" for *pro se* prisoners seeking federal habeas relief and "far from the extraordinary circumstances required to toll the statute").

In fact, in <u>Dodd v. United States</u>, 365 F.3d 1273, 1282-83 (11th Cir. 2004), the movant argued for equitable tolling because he was transferred to a different facility and detained there for over ten months without access to his legal papers. The Eleventh Circuit denied equitable tolling, stating that "lockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate." <u>Id</u>. at 1283. In <u>Paulcin v. McDonough</u>, 259 Fed.Appx. 211, 213 (11th Cir. 2007)(unpublished), the Eleventh Circuit also determined that the transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances. There, the petitioner Paulcin "failed to allege specifically or present evidence that his detention in county jail, due to pending criminal charges, was extraordinary or anything other than routine. Additionally, in the district court, Paulcin asserted only the conclusory allegation that he was denied access to the library and his records, but failed to allege how his inability to obtain legal materials thwarted his efforts to file a timely federal proceeding." Given all of the foregoing, petitioner

here has not alleged, let alone demonstrated, that he is entitled
to equitable tolling of the limitations period.

## C. __Fundamental Miscarriage of Justice__

Further, no fundamental miscarriage of justice will result
from time-barring the claim(s) raised in this habeas proceeding. In
other words, petitioner has not presented sufficient evidence to
undermine the court's confidence in the outcome of his criminal
proceedings sufficient to show that a fundamental miscarriage of
justice will result if the claim(s) are not addressed on the
merits. See Milton v. Sec'y, Dep't of Corr's, 347 Fed.Appx. 528,
531-532 (11th Cir. 2009) (unpublished) (holding that affidavits
proffered by _pro se_ habeas petitioner were insufficient to
establish actual innocence of murder, as would allegedly have
created an exception to one-year limitations period, because
affidavits were presented more than ten years after murder and
eight years after petitioner's trial, the affiants were in most
cases aware of the alleged facts to which they attested before
petitioner's trial, the affidavits were either not new evidence or
were of questionable reliability, and none of the evidence negated
petitioner's confession or his taped conversation with the victim's
mother wherein he implicated another individual in the murder)
(unpublished). Consequently, under the totality of the
circumstances present here, this federal petition remains time-
barred.

## D. __Actual Innocence__

If petitioner means to argue here, or in objections, that he
is entitled to review on the merits because of "actual innocence,"
that argument also warrants no relief. It is now well settled that
actual innocence may also serve to overcome the procedural bar
caused by an untimely filing. The United States Supreme Court has

determined that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), or expiration of the AEDPA statute of limitations. McQuiggin v. Perkins, 569 U.S. 383, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).[16]

"[T]he Schlup standard is demanding and permits review only in the "'extraordinary' case." House v. Bell, 547 U.S. at 538. "In the usual case the presumed guilt of a prisoner convicted in state [or federal] court counsels against federal review of [untimely] claims." Id. at 537. Schlup observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of

---

[16]Before the Supreme Court's decision in McQuiggins, the Eleventh Circuit had already recognized an equitable exception to the AEDPA's statute of limitations based on a credible showing of actual innocence. See San Martin v. McNeil, 633 F.3d 1257, 1267-68 (11th Cir.), cert. denied sub nom., San Martin v. Tucker, 565 U.S. 843, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).

Further, as will be recalled, the jury heard evidence of the petitioner's guilt at trial, and further heard testimony regarding the fact that Arsenio and Rizo might be the killers and not the petitioner. Further, to the extent Margarita's statement, provided years after the trial, contradicts the evidence adduced a trial, her statement falls far short of that which would be required to trigger a constitutional claim of actual innocence. See Herrera v. Collins, 506 U.S. 390, 418-19 (1993)(rejecting claim of actual innocence); Trease v. Sec'y, Dep't of Corr's, 2014 WL 4791996 at *7 (M.D. of Fla. Sept. 24, 2014). Moreover, it is also worth mentioning that any free-standing claim of factual innocence is not only unexhausted, but also procedurally defaulted from review here, as conceded by petitioner. Moreover, regarding claim 2, his claim that he is entitled to immediate deportation under a 2017 immigration treaty is not cognizable in a federal habeas corpus petition, filed pursuant to §2254, but should rather be filed in a habeas corpus petition, pursuant to 28 U.S.C. §2241, but only after the petitioner has exhausted his administrative remedies, by challenging the execution of his sentence by the institution charged with carrying out his sentences.

actual innocence are rarely successful." <u>Schlup</u>, 513 U.S. at 324.

To succeed on a claim of actual innocence, the petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>House</u>, 547 U.S. at 536-37 (quoting <u>Schlup</u>, 513 U.S. at 327, 115 S.Ct. 851). "Actual innocence" requires the petitioner to show "factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Thus, "[a] court also may consider an untimely petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a 'fundamental miscarriage of justice' because it would require that an individual who is actually innocent remain imprisoned." <u>San Martin v. McNeil</u>, 633 F.3d at 1267-68 (11th Cir. 2011)(citing <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001)).

Petitioner presents no new evidence, much less any "new reliable evidence" to support a claim of actual innocence. He has also not established that this requisite evidence exists, so as to meet the stringent actual-innocence standard. <u>See House v. Bell</u>, 547 U.S. 518. Rather, Petitioner's claims are not only purely legal challenges to his conviction and resultant sentence, but an attempt to retry his case before this court. As set forth above, it is well settled that actual innocence requires the petitioner to show "factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623.

The affidavit of petitioner's sister, Margarita, also does not alter the outcome of the state proceedings. When the affidavit is reviewed in light of the trial court evidence adduced at trial, and given with petitioner's own post-arrest admissions to police, it is clear that his sister's highly suspect affidavit, wherein she states her brother, Arsenio, admitted to committing the murders, is

disingenuous and not credible. Post-trial, self-serving affidavits, such as the one relied upon by petitioner, are viewed with extreme suspicion. See Drew v. Scott, 28 F.3d 460, 462-63 (5 Cir.), cert. den'd, 512 U.S. 1266 (1994). See also May v. Collins, 955 F.2d 299, 314 (5 Cir. 1992) and cases cited therein, cert. den'd, 504 U.S. 901 (1992)(when faced with recanting affidavits, trial court may make credibility choice in favor of trial testimony without taking additional live testimony).

There is no federal constitutional violation which would allow this court to ignore the time bar and review the claims raised herein on the merits. See Herrera v. Collins, 506 U.S. 390, 400 (1993)(holding "[c]laims of actual innocence based on newly discovered evidence have never held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); Jordan v. Sec'y, Dep't of Corr's, 485 F.3d 1351, 1356 (11th Cir. 2007). No such showing has been made here.

For all of the foregoing reasons, the petitioner has not demonstrated either statutory tolling, equitable tolling, actual innocence, or that a fundamental miscarriage of justice will result if the court does not review the merits of this federal petition.[17]

This Court is mindful of the Clisby[18] rule that requires district courts to address and resolve all claims raised in habeas proceedings, regardless of whether relief is granted or denied. Clisby, 960 F.2d at 935-36 (involving a 28 U.S.C. §2254 petition filed by a state prisoner); see Rhode v. United States, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that Clisby applies to §2255 proceedings). However, nothing in Clisby requires, much less

---

[17]Alternatively, for the reasons expressed in detail by the respondent, it appears that none of the claims warrant habeas corpus relief here.
[18]Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992).

suggests, consideration of claims or arguments raised for the first time in objections. Therefore, to the extent the movant attempts to raise arguments or further factual support for tolling of the federal limitations period, the court should exercise its discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance.[1]

## V. **Evidentiary Hearing**

To the extent petitioner requests an evidentiary hearing on this matter, the request must be denied. To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, show both extraordinary circumstances and reasonable diligence entitling a petitioner to enough equitable tolling to prevent his habeas petition from being time-barred. See generally Chavez v. Sec'y Fla. Dep't of Corr's, 647 F.3d 1057, 1060-61 (11th Cir. 2011)(holding that an evidentiary hearing on the issue of equitable tolling of the limitations period was not warranted in a §2254 proceeding and further finding that none of the allegations in the habeas petition about what postconviction counsel did and failed to do came close to the serious attorney misconduct that was present in Holland, instead, were at most allegations of garden variety negligence or neglect). If so, the petitioner gets an evidentiary hearing and the chance to prove that those factual allegations are true. Id. As noted by the Eleventh Circuit, "[t]he allegations must be factual and specific, not

---

[1]The petitioner is cautioned that any attempt to raise new facts or arguments, or any effort to provide due diligence in objections to this Report may not be considered in the first instance by the district court. See Williams v. McNeil, 557 F.3d 1287, 1291 (11th Cir. 2009)(finding no abuse of discretion where district court declined to consider petitioner's timeliness argument that was not presented to the magistrate judge); Brown v. United States, 2017 WL 7341401 at *3 (11th Cir. 2017); Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

conclusory. Conclusory allegations are simply not enough to warrant a hearing." Id. at 1061. Based upon the reasons stated above, this is not one of those cases where an evidentiary hearing is warranted on the limitations issue or otherwise.

## VI. **Certificate of Appealability**

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). See 28 U.S.C. §2253(c)(1); Harbison v. Bell, 556 U.S. 180, 129 S.Ct. 1481 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 542, 146 L.Ed.2d 542 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, he/she may bring this argument to the attention of the district judge in objections.

## VII. **Conclusion**

Based upon the foregoing, it is recommended that: (1) this petition for writ of habeas corpus be DISMISSED as time-barred;

(2) a final judgment be entered; (3) a certificate of appealability be DENIED; and, (4) the case be CLOSED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Henley v. Johnson, 885 F.2d 790,794 (1989); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

Signed this 24ᵗʰ day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Mario Albo Lara, Pro Se
     DC#086671
     Union Correctional Institution
     Inmate Mail/Parcels
     P.O. Box 1000
     Raiford, FL 32083

     Jeffrey Robert Geldens, Ass't Atty Gen'l
     Office of the Florida Attorney General
     444 Brickell Avenue, Suite 650
     Miami, FL 33131
     Email: jeffrey.geldens@myfloridalegal.com